GRAND LEGION OF ILLINOIS, SELECT KNIGHTS OF AMERICA

*v.*

LENA BEATY.

*Opinion filed December 22, 1906.*

1. INSURANCE—*a contract of insurance is construed liberally in favor of insured.* A contract of insurance is construed liberally in favor of the insured and is strictly construed against the insurer, and where two interpretations, each equally reasonable, are possible, that construction should be adopted which will enable the beneficiary to recover.

2. BENEFIT SOCIETIES—*a beneficiary has no vested right in the certificate during member's lifetime.* During the lifetime of a member of a benefit society in this State his beneficiary has no vested interest in the certificate, and the member may revoke the appointment of the beneficiary and appoint another in the absence of any contractual rights, and may, without the consent of the beneficiary, entirely destroy his or her interest in the certificate.

3. SAME—*wife may recover though member suicides, if contract of insurance is silent on that point.* Suicide by a member of a benefit society while sane does not defeat the right of his wife to recover on the benefit certificate as the beneficiary named therein, where the contract of insurance is silent as to the effect, upon the rights of the parties, of the member's act of self-destruction.

4. SAME—*when notice of assessment must be sent to a member.* Where the constitution of a benefit society provides that printed notices of assessment shall be sent by the grand recorder in such manner as the Grand Legion may provide, and further provides that the official organ of the society published and appearing on the first day of each month shall be an official notice of assessment to each member, it is necessary, in order to charge a member with notice, to show that the notice was not only published, but sent to such member.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

MILLARD R. POWERS, for appellant.

WALTHER & LANAGHEN, for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Appellant is organized as a fraternal beneficiary society under appropriate provisions of chapter 73 of Hurd's Revised Statutes of 1905. On the 24th day of October, 1894, Joe Beaty, husband of appellee, became a member of the society. A benefit certificate was issued to him for the sum of $1000, wherein appellee was named as beneficiary. On the 12th day of April, 1901, Joe Beaty died. Proofs of death having been furnished by appellee, the Grand Legion refused to pay the amount of the certificate. This action of assumpsit was brought in the superior court of Cook county to enforce appellant's liability on the contract. Two pleas were filed, the first alleging that Beaty, while in sound mind, intentionally took his own life; the second, that the deceased did not pay an assessment of which notice was sent him, and which assessment had been levied and which was payable about two months before his death, and that by reason thereof, and by force of language employed in the certificate and the by-laws, deceased stood suspended from membership and from all rights and benefits as a member at the time of his death, in consequence whereof appellee had no right to enforce the promise to pay her the amount of the certificate.

A general demurrer was filed to the pleas, and the court sustained the demurrer. Appellant stood by its pleas, default was entered, and after evidence had been heard judgment was rendered against appellant for the amount of the certificate and interest, and that judgment has been affirmed by the Appellate Court for the First District.

The first plea did not set forth any provision of the contract to the effect that intentional self-destruction of the member, while sane, will defeat the contract, but did allege, in substance, that Beaty, knowing that the defendant was incorporated for the purpose of, and was engaged in the business of, insuring human lives, and knowing that it had

for that purpose adopted a table of rates of premium or assessment, based upon the age of each individual at the date of his becoming insured, and knowing that it required a medical examination by one of its medical examiners of each individual seeking membership before such person would be accepted as an insurable risk, and knowing that in that examination questions were propounded as to family history, longevity of the lives of ancestors and relatives of each applicant and his habits and physical condition, said Beaty sought membership in appellant; that all of said questions were propounded to said Beaty by the society prior to his admission to membership; that the answers given to such questions by Beaty were of such character and conveyed such information as to lead the defendant to believe, and it did believe, that Joe Beaty would live the full period of life expectancy, as calculated upon the basis of past experience in the business of life insurance, and pay premiums or assessments for such period, if he remained a member, at the rate so fixed by said table; that relying on the information so obtained from Beaty, and on his obligation to pay such assessment during his natural life, defendant accepted him as a member; that it was Beaty's duty to prolong his life to the utmost, but that, disregarding that duty, he committed suicide while of sound mind.

It has been frequently held that where an ordinary policy of life insurance is payable to the estate of the insured and nothing is said in the contract in reference to death by suicide while the insured is sane, if he commits suicide while sane there can be no recovery on the policy, for the reason, as it is said, that the parties to the contract could not have contemplated a risk which would result from the act of the insured in taking his own life, and that the insured by his own act could not be permitted to enlarge and increase the risk assumed by the insurer, and having done so, to permit his representatives to recover would be to permit them to take advantage of his wrong. (*Ritter* v. *Mutual Life Ins. Co.*

169 U. S. 139.)   Where, however, a policy of that character is made payable to a third party and contains no stipulation in reference to the insured intentionally destroying his own life, it is held that in the event of self-destruction of the insured while sane the beneficiary may recover, for the reason that his or her interest became a vested one upon the issuance of the policy and no act of the insured can take away that right, except it be an act which the contract expressly provides shall have that effect.   *Patterson* v. *Natural Premium Mutual Life Ins. Co.* 100 Wis. 118; *Fitch* v. *American P. L. Ins. Co.* 59 N. Y. 557; *Darrow* v. *Family Fund Society,* 116 id. 537; *Kerr* v.*Minnesota Mutual Benefit Ass.* 39 Minn. 174; *Seiler* v. *Economic Life Ass.* 105 Iowa, 87.

In this State a beneficiary in a certificate issued by a fraternal beneficiary society has no vested interest therein during the lifetime of the insured. (*Middeke* v. *Balder,* 198 Ill. 590.)   Before the death of a member in such a society he may revoke the appointment of the beneficiary named in the certificate and appoint another, and may, without the consent of the beneficiary, destroy his or her right entirely. (*Martin* v. *Stubbings,* 126 Ill. 387; *Benton* v. *Brotherhood of Railroad Brakemen,* 146 id. 570.)   The law being so, appellant contends that where the contract between the beneficiary society and the insured contains no provision in reference to the effect of intentional destruction of the life of the insured by himself, the effect thereof is precisely the same as though the policy were an ordinary policy of life insurance payable to the estate of the deceased; that taking his own life under such circumstances is a wrongful act on the part of the insured, and that as the beneficiary has no just cause of complaint if the insured defeats or destroys the right of the beneficiary to receive the benefit named in the certificate, the wrong done by the insured in this respect is to be regarded as defeating the right of the beneficiary to recover; and it has been so held in the cases of *Ritter* v. *Mutual Life Ins. Co. supra, Shipman* v. *Protected Home*

*Circle,* 174 N. Y. 398, and *Supreme Commandery Knights Golden Rule* v. *Ainsworth,* 71 Ala. 436.

We are not disposed, however, to follow the reasoning of those cases. Seldom, if ever, has the insured or his beneficiary the advantage of legal advice when the insured is entering into a contract of the character of the one now before us. The terms of the contract are entirely of the insurer's own making. It is axiomatic in the law of insurance that the contract shall be liberally construed in favor of the insured and strictly construed against the insurer, and where two interpretations, equally reasonable, are possible, that construction should be adopted which will enable the beneficiary to recover. (*Schroeder* v. *Trade Ins. Co. of Camden,* 109 Ill. 157; *Globe Accident Ins. Co.* v. *Gerisch,* 163 id. 625.) Contracts of life insurance generally specify the acts or defaults on the part of the insured or the member which shall work a forfeiture of the contract. If the right to recover on the certificate is to be defeated by the act of the insured in purposely taking his own life while sane, why should the contract not so specify? Why leave so important a question to be resolved from terms of the contract that are not suggestive of forfeiture to the ordinary applicant for membership in a society of this character? The mere absence of such a provision in the contract leads such an applicant to conclude that the contract is not defeasible by intentional self-destruction on the part of the insured. Where a certificate is payable to the wife, and where a forfeiture in the event of suicide is intended, a member of a fraternal beneficiary society should, we think, be so advised by unmistakable provisions to that effect inserted in some instrument from which his contract with the society is to be ascertained.

The precise question under consideration has not before been presented to us. In *Royal Circle* v. *Achterrath,* 204 Ill. 549, however, it was said (p. 565) : "The act of suicide works a forfeiture of the certificate, not because the member

is thereby deprived of his good standing in the order at the time of his death, but because, aside from all question of good standing, it is especially provided that suicide, in and of itself, shall defeat a recovery. If the intention was that loss of good standing in the order always occurred when death was from self-destruction, then there would be no occasion for providing especially against suicide. In such case it would only be necessary to provide, generally, that loss of good standing should work a forfeiture of the policy, and if the commission of suicide is included in the loss of good standing the special provisions against suicide would be unnecessary."

We conclude that the act of a member of a fraternal beneficiary society who intentionally takes his own life while sane does not defeat the right of his beneficiary, who is his wife, to recover the benefit named in the certificate, where the contract of insurance is silent as to the effect, on the rights of the parties, of such an act of self-destruction. This view finds support in the following authorities: *Mills* v. *Rebstock,* 29 Minn. 380; *Kerr* v. *Minnesota Mutual Benefit Ass.* 39 id. 174; *Robson* v. *U. O. F.* 93 id. 24; *Campbell* v. *Supreme Conclave,* 66 N. J. L. 274; *Supreme Lodge* v. *Underwood,* 3 Neb. (unofficial) 798; *Supreme Conclave* v. *Miles,* 92 Md. 613; Bacon on Ben. Societies and Insurance, (3d ed.) sec. 337.

The second plea was bad for several reasons, only one of which will be pointed out. It appears from the plea that section 6 of article B of the constitution of appellant provides, among other things: "Printed notices of assessment shall be made and sent  *  *  *  by the grand recorder in such manner as the Grand Legion may provide;" and that section 1 of article 17 of the constitution provides: "The *Select Knights News,* the official organ of the defendant, published by the Select Knights News Publishing Company, and appearing on the first day of each month, shall be an official notice of assessment to each member of defendant."

The plea then avers "that printed notices of such assessments were on March 1, 1901, made and sent in the manner provided by the Grand Legion, to-wit: *by publishing such assessment notice* in the *Select Knights News,* the official organ of the defendant." We think the constitutional provisions above quoted should be construed to require that the notice should be in some manner sent to the insured. The requirement that "printed notices of assessment shall be made * * * in such manner as the Grand Legion may provide," was satisfied by the publication in the newspaper in compliance with section 1 of article 17 of the constitution, but that did not dispense with the necessity of sending the notice. Publishing the notice did not amount to sending it to the assured, and the constitution did not so provide. Under the laws of the order, as alleged, Beaty did not stand suspended unless the notice had been sent. Lacking an averment of the sending of the notice the plea presented no defense.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*