## Grand Lodge of the Ancient Order of United Workmen of the State of Illinois v. Agnes Oetzel.

### Gen. No. 13,353.

1. FRATERNAL BENEFIT SOCIETY—*what by-laws binding upon member.* A by-law adopted by a society after a member's admission is binding upon such member where in his application for membership he has agreed that he will comply with all the laws and regulations which then were or might thereafter be enacted by the society.

2. FRATERNAL BENEFIT SOCIETY—*how contract of insurance construed upon question of forfeiture.* A contract of insurance made by a fraternal benefit society is, upon a question of forfeiture, liberally construed in favor of the assured:

3. FRATERNAL BENEFIT SOCIETY—*by-law with respect to members engaging in saloon business construed.* Held, that a particular by-law upon this subject was intended to prevent members not already engaged in the saloon business from entering into the same, but that it did not apply so as to preclude re-engagement therein of one temporarily forced to abandon his saloon business, in which he was engaged at the time of the adoption of the by-law.

Assumpsit. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch

Appellate Court at the October term, 1906.   Affirmed.   Opinion filed October 18, 1907.

**Statement by the Court.**   Appellant, a fraternal insurance society organized under the laws of Illinois, issued to Justus Oetzel a beneficiary certificate dated September 24, 1892, for $2,000.   Appellee, his wife, was named as beneficiary therein.   In his application for membership, in the appellant order, Oetzel agreed that he would comply with all the laws and regulations which then were or might thereafter be enacted by the appellant, as an express condition upon which he was to be entitled to participate in the beneficiary fund of the order.

On May 3, 1899, the appellant order enacted a by-law in the following words and figures:

"Article II—Membership.

Qualification for Membership.

Section 1.   No person shall be admitted to membership unless he be a white male person of the full age of eighteen, and not over the age of forty-five years, of good moral character, able and competent to earn a livelihood for himself and family, and a Believer in a Supreme Being, the Creator and Preserver of the universe.   No person shall be admitted to membership who is engaged in the sale, by retail, of intoxicating liquors as a beverage.   Any member of this Order who shall, after May 15, 1899, enter into the business or occupation of selling, by retail, intoxicating liquors as a beverage, shall stand suspended from any and all rights to participate in the Beneficiary Fund of the Order, and his Beneficiary Certificate shall become null and void from and after said date of his so engaging in said occupation, and no action of the Lodge of which he is a member, or of the Grand Lodge or any officer thereof, shall be necessary or a condition precedent to any such suspension.   In case any assessment shall be received from a member who has thus engaged in such occupation after May 15, 1899, the receipt thereof shall not continue the Beneficiary Certificate of such member in force, nor shall it be a waiver of his so engaging in such occupation."

At the time the certificate was issued Justus Oetzel was engaged in conducting a saloon in the city of Chicago. He continued in this business at various places in the city of Chicago until December, 1899, when his saloon was closed out and he did not conduct a saloon business again until about the end of April, 1900, when he opened a saloon at 511 North Ashland avenue, Chicago, and continued in the business there until his death on November 9, 1900.

On June 13, 1900, the Lafayette Lodge of the appellant order, of which Oetzel was a member, entered an order suspending him from the order, upon receiving information that he was engaged in the liquor business. Tenders of payment of all dues after the suspension were made on behalf of Oetzel, but were refused.

Notice of the death of Oetzel was given to appellant, and upon its refusal to pay the amount named in the benefit certificate, appellee instituted this suit in the Circuit Court against appellant upon the certificate and recovered a judgment for $2,506.95, to reverse which this appeal is prosecuted.

JOHN P. AHRENS and T. F. MONAHAN, for appellant.

WELLS, BOWERSOCK & STILWELL, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The question presented by the record is, whether Oetzel violated the by-law of the order by conducting a saloon business at No. 511 North Ashland avenue, on and after May 23, 1900, and stood suspended from membership and from all rights and benefits as a member at the time of his death by virtue of that fact, and the action of the lodge suspending him.

We entertain no doubt that under the application for membership and the certificate issued to deceased the subsequently enacted by-law became a part of the contract between appellant and deceased. Moerschbaecher v. Supreme Council Royal League, 188 Ill., 9; Supreme Lodge K. of

P. v. Kutscher, 179 *id.*, 340; Supreme Lodge K. of P. v. Trebbe, 179 *id.*, 348; Fullenwider v. Royal League, 180 *id.*, 621.

In considering the facts shown by the record, and the question of forfeiture under this contract, the policy or contract is to be liberally construed in favor of the assured. In Grand Legion Select Knights v. Beaty, 224 Ill., 346, it is said at page 350: "The terms of the contract are entirely of the insurer's own making. It is axiomatic in the law of insurance that the contract shall be liberally construed in favor of the insured and strictly construed against the insurer, and where two interpretations, equally reasonable, are possible, that construction should be adopted which will enable the beneficiary to recover."

The question then is, shall the contract be so strictly construed that the forced closing up of the business of the deceased at No. 2 Clarkson court in December, 1899, and the consequent suspension of his business shall be deemed a going out of the saloon business at that time, and the opening of a saloon in the following May at 511 Ashland avenue a new entry into the business, or shall it be considered, under a broader and more liberal construction of the contract, a temporary suspension of the business and a resumption thereof at another place.

The by-law in question as amended disqualifies for membership in the order all persons "engaged in the sale by retail of intoxicating liquors as a beverage," who were not members at the time the amendment became operative. It did not affect the memberships of those who were engaged in that business at the date of the adoption of the amendment. But it provided that any member of the order who should after May 15, 1899, enter into said business, should stand suspended from any and all rights of participation in the beneficiary fund of the order, and that his certificate should become null and void from the date of his engagement in the business. Thus the intention and purpose of the amendment, as expressed by its provisions, was not to forfeit the rights or beneficiary certificates of members who were en-

gaged in the sale by retail of intoxicating liquors as a beverage at the time it went into effect. The intention is expressed, however, that if any member not engaged in the business changes his business and engages in the business mentioned in the by-law, after May 15, 1899, that act would work a forfeiture of his beneficiary certificate and all rights under it. We find no language in the amended by-law which conveys the purpose and intention, or which can be construed to mean that if a member engaged in the retail liquor business is forced to suspend that business for a time, either by ill-health or financial or other difficulties, and afterwards within a few months resumes his business without having abandoned it and taken up some other vocation, he would thereby suffer a forfeiture of contract and all rights under it. To read into the language of the by-law such a provision or purpose would be construing the contract in favor of the insurer and against the assured. To so construe the contract would violate the rule of construction announced in the authorities cited above.

The evidence in the record shows, without contradiction or controversy, that during the last year and a half or two years of the life of the deceased he was seriously ill and at times incapacitated for any business. As a natural result of this ill-health his business at Clarkson court was closed up and the place was taken possession of by the brewery with which he was dealing. He engaged in no other business thereafter until the following April or May. Under the circumstances it may well be inferred that he was unable between December 1899 and April or May, 1900, to re-establish his business under satisfactory conditions. The evidence fails to show that he intended to abandon it and engage in another occupation. We think, therefore, that when he reopened a saloon at No. 511 North Ashland avenue it was not entering into the occupation of selling by retail intoxicating liquors as a beverage within the meaning and intent of the by-law.

Finding no error in the record the judgment is affirmed.

*Affirmed.*