MARY ZEMAN, Defendant in Error, *vs.* THE NORTH AMERICAN UNION, Plaintiff in Error.

*Opinion filed April 23, 1914.*

1. BENEFIT SOCIETIES—*what members are exempt from operation of by-law.* In the absence of a provision in a by-law of a benefit society that it shall apply to existing members, a by-law which provides for the suspension of a member and for the forfeiture of all rights, by operation of law and without notice, in case of those who, after obtaining membership in the order, engage in certain prohibited occupations, does not include those who are members and engaged in the prohibited occupations at the time of the adoption of the by-law.

2. SAME—*when a by-law of a benefit insurance order may be waived.* A by-law of a benefit society declaring the suspension of membership and the forfeiture of all benefits where a death occurs, directly or indirectly, while a member is engaged in certain prohibited occupations may be waived by the officers and agents of the local order or society, who, with knowledge of the facts, accept payments of dues and treat the contract as in force.

3. SAME—*insurance contracts are strictly construed.* Contracts of insurance, being entirely of the insurer's own making, are construed strictly against the insurer and liberally in favor of the insured, and where two interpretations, equally reasonable, are possible, that construction should be adopted which will enable the beneficiary to recover.

4. SAME—*when by-laws declaring forfeitures are waived.* The local lodge or council of a mutual benefit society is the agent of the supreme lodge and may waive by-laws which declare forfeitures and suspensions by accepting dues and assessments with full knowledge of all of the facts constituting a violation of the rules of the order, or by other acts and conduct of its officers and agents of such a character as to induce a belief on the part of the insured that the society recognizes the insured as a member of the society in good standing and does not intend to exercise its right of forfeiture; and for this purpose knowledge of facts received or communicated to its officers having authority to act in the premises, and whose duty it is to act, is imputed to the society.

5. SAME—*what acts show waiver.* A benefit society waives the right to forfeit a member's benefit certificate on the ground that he was engaged in a prohibited occupation, where the president, the local organizer and collector and the secretary of the local order

made numerous visits to the member's place of business and knew the character of his occupation, and, together with the assistant manager of the order, who also visited the member's place of business, failed to take steps for the suspension of the member.

6. APPEALS AND ERRORS—*when finding as to waiver and notice will not be disturbed.* The finding of a jury upon the question of notice and waiver will not be disturbed by the Supreme Court unless the record clearly shows that the trial court committed error in its rulings in the admission or in the exclusion of evidence to the prejudice of the complaining party or that it misdirected the jury as to the law of the case.

7. PRACTICE—*oral charge should be construed as a whole.* An oral charge to the jury by the municipal court of Chicago will be construed as a whole, and if it be not misleading it is no objection to the charge that certain portions of it are subject to criticism.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. EDWARD A. DICKER, Judge, presiding.

ROBERT S. ILES, for plaintiff in error.

F. J. KARASEK, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The defendant in error, Mary Zeman, brought an action of assumpsit in the municipal court of Chicago on a benefit certificate in which she was made the beneficiary, and which had been issued by the plaintiff in error, the North American Union, a fraternal benefit society organized under the laws of the State of Illinois, to James Zeman, the husband of defendant in error. A trial was had before a jury, which resulted in a verdict and judgment in favor of defendant in error for $2000, the face of the certificate. An appeal was taken to the Appellate Court for the First District, which affirmed the judgment of the trial court. On application of plaintiff in error a writ of *certiorari* was allowed to review the judgment of the Appellate Court.

263 — 20

On the trial plaintiff in error admitted the issuance of the benefit certificate and the death of the insured, and there was no question but that he had paid all dues up to the time of his death. The defense set up in the affidavit of merits filed by the plaintiff in error was, that the insured, James Zeman, had forfeited all rights of himself and his beneficiary under the certificate by engaging in the business of a saloon-keeper and bar-tender after becoming a member, in violation of his contract and the by-laws of the society. Defendant in error claimed that while the deceased had been engaged in the saloon business during a portion of the time that he held the benefit certificate, the plaintiff in error association had by its acts and conduct waived the right to declare a forfeiture of the certificate, and that was the principal issue in the municipal court. The errors assigned in the Appellate Court were that the court improperly instructed the jury, that the instructions were not based on the evidence, and that the judgment of the municipal court was contrary to the law and evidence. The principal error assigned in this court is the action of the Appellate Court in affirming the judgment of the municipal court. The principal contention of plaintiff in error is, that the evidence did not show such waiver by those who were authorized to make such waiver on behalf of the society.

The certificate in question was dated July 1, 1902, and was payable to Mary Zeman from the mortuary fund of the plaintiff in error society, "in accordance with and under the provisions and the laws governing the said fund, upon satisfactory proofs of the death of said member and upon the surrender of this certificate, provided that said member is in good standing in this association at the time of his death, and provided also that this certificate shall not have been previously surrendered by said member or canceled in accordance with the laws of this association, and subject also" to certain other provisions, among which are: "If said member shall suffer his membership to be terminated

from any cause prior to his death he shall forfeit to said North American Union all moneys paid in by him on account of his membership in the association, and he and his beneficiary shall forfeit all rights acquired by virtue of his said membership and shall not be entitled to any of the payments herein provided." It further provided that the contract should be incontestable after two years from date except for engaging in prohibited occupations or becoming habitually addicted to the excessive use of intoxicating liquors, opium or other injurious drugs or substances, contrary to the laws, rules and regulations of the association and the agreements of the members. It also made the statements in the application for membership and in the medical examiner's blank, etc., a part of the contract. The liability of the society to pay said insurance was further "on condition that the said member complies in future with the laws, rules and regulations now governing the said North American Union and the mortuary and reserve funds thereof, or that may hereinafter be enacted to govern the same, all of which said laws, rules and regulations are also made a part of this contract."

Zeman's occupation was that of an upholsterer at the time he was admitted to membership, in 1899. The first certificate issued to him was for $1000, which later was increased and a new certificate issued to him for $2000. In the written application made by him June 14, 1902, ostensibly "for the purpose of securing membership in the North American Union" but really for the purpose of having his benefit certificate increased, as before stated, Zeman "represented and declared" (truthfully) that he was not then "engaged in any of the following occupations or employments." Then followed a long list of occupations, not including an upholsterer, and closing with "saloon-keeper, bar-tender, or personally engaged in the manufacture or sale of intoxication liquors." The application also contained the following clause: "I am not now addicted to the ex-

cessive use of intoxicating liquors, opium or other injurious substances, and should I become so addicted or actively engaged in any of the above enumerated occupations or employments, my so doing shall forfeit and absolutely terminate thereafter all rights, interests, payments, benefits or privileges of myself, my family, heirs, dependents or beneficiaries without proceedings for expulsion or otherwise on the part of said association. If accepted as a member I agree to comply with all laws, rules and usages now in force in the order or which may hereafter be adopted by it."

The by-laws of the association relied on by plaintiff in error and introduced in evidence, with the dates of their enactment, were, in substance, as follows:

Section 2 of law 3 as amended, in force May 20, 1909: "Persons who are engaged in the following occupations are not acceptable risks and are ineligible for membership in this order: * * * Saloon-keepers, bar-tenders, and those persons engaged in the manufacture or sale of intoxicating liquors."

Section 3 of law 3, enacted March 15, 1906, in force July 1, 1906: "All members of the order are prohibited from engaging in or pursuing any of the occupations or employments enumerated in the preceding section, * * * and any member of the order who shall, after obtaining membership therein, become engaged in or pursue any business or employment enumerated in section 2 * * * shall stand suspended from the order by operation of law, without notice, and forfeit all interest in the mortuary and reserve funds, from and after the date of engaging in such prohibited business, * * * and no benefit or benefits shall be paid to the beneficiary of any member on account of the death of such member occurring *while engaged in any of the employments enumerated,* * * * either as the direct or indirect result of engaging in such prohibited occupation."

Certain portions of other by-laws were also introduced in evidence. Section 3 of law 9 provided that if a member should at any time *after obtaining membership become engaged* in any of the prohibited occupations specified in section 2 of law 3, or should violate any of the provisions of section 3 of law 3, he should stand suspended from the order by operation of law, without notice, such suspension to date from the time when the member so became engaged in such prohibited occupation or violated such provisions, and any and all payments thereafter to the collector of the council should in no case be held or construed as a waiver on the part of the order of the provisions of this section, but that if such member should permanently relinquish such prohibited occupation or employment he might be re-instated to membership in the same manner as is provided by the laws of the order for re-instatement of members suspended for non-payment of assessments, dues and premiums, and that the receipt and retention of any premium or assessments should not, in any case, constitute a waiver on the part of the order of any law or defense which might or could have been relied on by the order had such payments not been received or retained.

Plaintiff in error contends that by reason of the provisions in section 3 of the by-laws just referred to, the engaging in any of the occupations specified in section 2 of law 3 should work a suspension of the member from the order, by operation of law and without notice, from the time he became engaged in such prohibited occupation, and that the collection and retention of dues should not be construed as a waiver by the order of those provisions of the by-laws; that the insured, by engaging in such prohibited occupation and failing to be re-instated after ceasing such occupation, forfeited all rights of himself and his beneficiary under the policy. The insured followed the business of upholstering from the time he joined the order, in 1899, until May, 1906, when he engaged in the saloon business,

which he conducted until July, 1909, when he retired from the latter business. During the time he was engaged in the saloon business he tended bar in his various places of business. He died November 26, 1909, from tuberculosis, and at the time of his death, as before stated, had paid all of his dues and assessments in the order, up to and including December of that year. On May 1, 1909, he underwent an operation for peritonitis, from which he never sufficiently recovered to enable him to again attend to or engage in the management of his saloon business. There is no evidence in the record which shows that he was ever at his place of business again after this operation, in May, 1909. Section 2 of law 3, as amended, making saloon-keepers and bar-tenders ineligible to membership in the order, was not adopted or in force until May 20, 1909, or until more than twenty days after the insured had ceased to attend to his saloon business. What the provisions of this section were in respect to this occupation before the amendment the evidence in the record fails to show. Section 3 of law 9, adopted in 1906, only has reference to those members who become *engaged in the business* of saloon-keepers, bar-tenders, etc., as specified in section 2 of law 3, *after becoming members* of the order. At the time this amendment was adopted the insured was both engaged in the saloon business and a member of the society. It therefore did not affect him or work a forfeiture of his certificate. Contracts of this character are entirely of the insurer's own making and are to be construed strictly against the company and liberally in favor of the insured. As said by this court in *Grand Legion Select Knights* v. *Beaty,* 224 Ill. 346: "It is axiomatic in the law of insurance that the contract shall be liberally construed in favor of the insured and strictly construed against the insurer, and where two interpretations, equally reasonable, are possible, that construction should be adopted which will enable the beneficiary to recover."

The purpose of this amendment, as expressed by its provisions, was not to forfeit the rights or benefit certificates of members who were engaged in the saloon business or tending bar at the time that it took effect, but only of those who should thereafter, not being engaged in that business at the time of becoming members, engage in that business. As Zeman was engaged in the saloon business at the time the amended by-law was adopted he did not become engaged in the business after its adoption and was by its express provisions exempted from its operation, and the rights of his beneficiary in the premises were not affected by it or by the provisions of section 3 of law 3, which is limited to those whose death occurs *while engaged* in such prohibited occupations, either as the direct or indirect result of engaging in such prohibited occupations. The evidence also shows that during the time the insured was engaged in the saloon business he was frequently visited at his place of business by James Basta, who was president of the local lodge in the years 1906, 1907 and 1909; by Joseph Chadraba, one of the organizers of the local lodge, who also held the office of collector for two years during this time; by Charles Holub, its secretary, and by various others of its officers and members, all of whom knew that the insured was engaged in the saloon business and tended bar therein. It was also shown that Zeman was elected president of the local order in 1908, and that George Hinckley, assistant general manager of the North American Union during the years 1908 and 1909, attended this meeting and installed Zeman and the others in office and then went with him and others to his place of business, where the insured served drinks to them and others; that some of the officers of the local lodge were in the insured's place of business as often as one hundred or two hundred times during those years.

Plaintiff in error insists that the testimony of these officers of the local council to these facts was not competent to establish notice to the plaintiff in error of the fact that

the insured was engaged in the saloon business at the time he was installed as president, that dues were collected from him, and that he was in other ways acknowledged and treated as a member of the local council in good standing. No authorities are cited from this State to sustain this contention. The law is well settled in this State that the provisions of the by-laws of mutual benefit societies of this character may be waived by the society; that the local lodge or council of such society is the agent of the supreme lodge, and may waive such by-laws by accepting dues and assessments with full knowledge of all the facts constituting a violation of the rules of the order, or by other acts and conduct of its officers and agents of such a character as to induce a belief on the part of the insured that the society does not intend to exercise its right of forfeiture, but, on the contrary, recognizes the insured as a member of the society in good standing. (*Jones* v. *Knights of Honor,* 236 Ill. 113; *Grand Lodge A. O. U. W.* v. *Lachmann,* 199 id. 140.) For this purpose knowledge of facts received or communicated to its officers having authority to act in the premises, and whose duty it is to act in the premises, is imputed to the society. (*Court of Honor* v. *Dinger,* 221 Ill. 176; *Walker* v. *American Order of Foresters,* 162 Ill. App. 30; *O'Brien* v. *Catholic Order of Foresters,* 172 id. 638.) There is no question but that Hinckley, the assistant general manager and afterwards general manager of the order in the district comprising Illinois and other States, had authority to act in the premises, as the plaintiff in error complains of the fact that it was not permitted to show that on some other occasion, when he obtained knowledge of the fact that a member of one of the other local branches was engaged in the saloon business, he caused such member to be expelled or suspended. Under the authorities above cited the evidence offered was clearly competent to prove notice and waiver. In this case the jury have found for the defendant in error on the question of waiver. Their

finding had the approval of both the trial and Appellate Courts, and we are not at liberty to disturb such finding unless the record clearly shows that the trial court committed error in its rulings in the admission or exclusion of evidence to the prejudice of plaintiff in error or misdirected the jury as to the law of the case. We see no error in refusing to admit evidence as to the custom of Hinckley as to preferring charges when he obtained knowledge that a member was engaged in a prohibited occupation, or of the records of the local branch for the purpose of showing that some fifteen or twenty members had been expelled for engaging in prohibited occupations since its organization. But even had such evidence been admissible, we do not think that the plaintiff in error was injured by its exclusion, as it would only have tended to show that when it was intended to insist upon the forfeiture clause in the by-laws appropriate action was instituted for the purpose of securing expulsion or suspension from the order, and the fact that Zeman was allowed to remain in the order and was not expelled would tend to show that the plaintiff in error waived the provisions of the insurance contract as to him. Even if the contract of insurance and the by-laws are construed as contended for by plaintiff in error, the evidence sufficiently shows a waiver of the provisions which would otherwise defeat a recovery on the policy.

It is also insisted that the court erred in its charge to the jury as to the law of the case. We have examined the same carefully, and are of the opinion that, if anything, it stated the law too favorably for the plaintiff in error. In cases tried in the municipal court of Chicago the judge is authorized to instruct the jury either orally or in writing. In this case the charge was delivered to the jury orally. In such cases it is not expected that it will be entirely free from criticism in every particular. Where the jury are charged orally it consists of one continuous and connected charge, so that one part will always limit and qualify the

other parts, and it is unfair to the court to pick out certain portions of the charge, omitting the other portions which limit and qualify the same, and then insist that the court committed error in its charge to the jury. (*Greenburg* v. *Childs & Co.* 242 Ill. 110.) In effect, the jury were instructed that if the plaintiff had proven, by a preponderance of the evidence, that the defendant society had waived as to the insured the provisions in the by-laws of the society prohibiting members from engaging in the saloon business, then the policy was in force and the plaintiff could recover. As the charge in this case could not have misled the jury as to the law of the case, and was, if anything, too favorable to the plaintiff in error under the issue formed by the pleadings, we see no reason for reversing the case on that ground. A party cannot complain of error committed in his favor.

Finding no reversible error in the record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*