## Supreme Lodge Knights of Pythias of the World v. Henry J. Kutscher, Adm'r.

1. FORFEITURES—*Not Favored in Law.*—Forfeitures are not favored in law and will not be enforced except where the acts relied upon as creating them are clearly shown.

2. SUICIDE—*Forfeiture of Insurance.*—Where a policy of life insurance contains no provision making suicide or self-destruction by the

assured, a forfeiture of the policy, and makes the indemnity under it payable to some one other than the assured or his personal representative, then intentional self-destruction, while he is sane, does not avoid the policy; but where such a policy is by its terms payable to the assured or his personal representative, then intentional self-destruction while sane will avoid the policy.

3. LIFE INSURANCE—*Suicide of the Assured While Sane.*—The estate of an assured person, who takes his life intentionally while sane, can not recover under a policy containing a provisioh making suicide or self-destruction by the assured a forfeiture.

4. BENEVOLENT ASSOCIATIONS—*Members Bound by Subsequently Enacted By-Laws.*—Where an application for membership in the endowment rank of a benevolent association contains a provision that the applicant shall conform to and obey the regulations of the order governing the rank, then in force or that might thereafter be enacted, and the certificate of membership recites that the consideration on which it was issued is, among other things, the compliance by the member with all such regulations, the right of the member to benefits is subject to a validly enacted law of the order, passed after the issuance of the certificate, providing that no member who commits suicide shall be entitled to benefits.

5. SAME—*Effect of Anti-Suicide Provisions Adopted after Application.*—A provision in the constitution of a benevolent association having a life insurance department that its board of control shall have entire charge and full control of the endowment rank, subject to such restrictions as the supreme lodge may provide, does not authorize the board of control to pass a regulation providing that no beneficiary who commits suicide shall be entitled to benefits.

6. SAME—*Powers Can Not be Delegated.*—The charter of a benevolent association authorizing its supreme lodge to establish an endowment rank on such terms and conditions as to the supreme lodge may seam proper, does not authorize such lodge to delegate to the board of control power to pass a law providing that no member who commits suicide shall be entitled to benefits.

**Assumpsit,** on a certificate of membership in a beneficiary association. Appeal from the Circuit Court of Sangamon County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 2, 1897.

H. H. FIELD and GREENE & HUMPHREY, attorneys for appellant.

CONNOLLY, MATHER & SNIGG, attorneys for appellee.

If a person takes out a policy and then deliberately suicides while sane, his estate, or his personal representa-

tives who represent his estate, perhaps may not recover. But third persons or beneficiaries may recover. Fitch v. American P. L. Ins. Co., 59 N. Y. 557; Mills et al. v. Bobstock et al., 13 N. W. Rep. 163; Northwestern, etc., v. Wanner, 24 Ill. App. 357; Kerr v. Minnesota Mutual Ben. Ass'n, 39 N. W. Rep. 312; Darrow v. Family Fund Soc., 22 N. E. Rep. 1093; Ritter v. Mutual L. Ins. Co., 70 Fed. Rep. 957.

MR. JUSTICE BURROUGHS DELIVERED THE ·OPINION OF THE COURT.

This is an action of assumpsit, brought by the appellee, Kutscher, as administrator of Louisa M. Henry, deceased, upon a certificate of membership, or policy of insurance, issued by appellant to one William C. Henry, who was the husband of Louisa M. Henry. For the sake of brevity, we will hereafter speak of said certificate as a "policy."

The policy is in words and figures following: "Fourth class, $3,000. This certifies that Brother William C. Henry received the obligation of the Endowment Rank of the Order of Knights of Pythias of the World, in Section No. 45, on July 1, 1889, and is a member in good standing in said rank; and in consideration of the representations and declarations made in his applications bearing date of June 4, 1889, and April 26, 1892, which applications are made a part of this contract, and the payment of the prescribed admission fee; and in consideration of the payment hereafter to said endowment rank of all assessments, as required, and the full compliance with all the laws governing this rank now in force, or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World, or the Board of Control of the Endowment Rank, and shall be in good standing under said laws, the sum of $3,000 will be paid by the Board of Control of the Endowment Rank Knights of Pythias of the World to Louisa M. Henry, his wife, as directed by said brother in his application, or to such other person or persons as he may subsequently direct, by change of beneficiary entered upon the records of the Supreme Secretary of the Endowment Rank, upon due notice and

proof of death and good standing in the rank, at the time of death, and surrender of this certificate. *Provided*, however, that the interest of any beneficiary, as designated by said brother, or the interest of his or her heirs shall cease or determine in the case of the death of said beneficiary during the lifetime of such member, and in that case the benefit accruing under this certificate shall be paid as provided for in article 12, section 1, of the Endowment Rank of the constitution. *Provided, further*, that if at the time of the death of said brother the proceeds of one assessment on all members of the endowment rank shall not be sufficient to pay in full the maximum amount of endowment held under this certificate, then there shall be paid an amount equal to the proceeds of one full assessment on all remaining members of the Endowment Rank, less ten per cent for expenses, and the payment of such sum to the beneficiary or beneficiaries entitled thereto under the law shall be in full of all claims and demands under and by virtue of this certificate. And it is understood and agreed that any violation of the within mentioned conditions or the requirements of the laws in force governing this rank, shall render this certificate and all claims null and void; and that the said Endowment Rank shall not be liable for the above sum or any part thereof.

In witness whereof we have hereunto subscribed our names and affixed the seal of the Supreme Lodge Knights of Pythias of the World.

Issued this 19th day of July, 1892, p. 29, at Chicago, Illinois, and registered in book 3, folio 130."

On the 3d day of October, 1895, William C. Henry departed this life, having paid all assessments and performed all other conditions of said policy, and left surviving him his wife, Louisa M. Henry, who died before suit was brought, leaving surviving her two children. Demand was made for payment of the sum specified in said policy, and an offer also made to surrender the same, but payment was refused. There being no controversy as to the sufficiency of the declaration, it is not necessary to set it forth with any degree

of particularity. Various pleas, replications, rejoinders and demurrers were filed, some of which were afterward withdrawn. These steps need not be herein stated except as to those pleadings which finally made up the issues.

The appellant filed the general issue (non-assumpsit) and issue was joined thereon. The appellant also filed two special pleas setting up that all the supposed causes of action in the declaration described are one and the same; that the appellant is a corporation organized for fraternal and benevolent purposes, and for the mutual benefit of the members. The first plea also alleges that said William C. Henry was a member of Capital Lodge No. 14, and also a member of Section 45, and was subject to the constitution and rules, by-laws and regulations of the Endowment Rank Knights of Pythias of the World, and agreed to abide by all laws, rules and regulations of said order then in force, or as the same might be thereafter adopted or amended.

The plea also alleges that on the 4th day of June, 1889, and on the 26th day of April, 1892, said Henry executed and presented to defendant his applications for membership in the Endowment Rank, which applications became part of the contract of insurance, and such applications are made parts of said plea. That by the terms of said applications it was provided as follows:

" I hereby agree that I will punctually pay all dues and assessments for which I may become liable, and that I will be governed and this contract shall be controlled by the laws, rules and regulations of the order governing this rank now in force, or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World, or submit to the penalties therein contained, to all of which I freely and willingly subscribe."

The plea further avers that on the 13th day of January, 1893, the Supreme Lodge through its authorized board of control passed a law, rule and regulation for the government of members of the Endowment Rank in the words and figures following :

" If the death of any member of the Endowment Rank,

heretofore admitted into the first, second, third or fourth classes, or hereafter admitted, shall result from self-destruction, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics or opiates, or in consequence of a duel, or at the hands of justice, or in violation or attempted violation of any criminal law, then, in such case, tne certificate issued to such member, and all claims against said Endowment Rank, on account of such membership, shall be forfeited."

The plea further alleges that at its annual session in the city of Washington, in September, 1894, the Supreme Lodge adopted and ratified said law, and the same became and was in force from and after its passage, on January 13, 1893, as an amendment to the general laws of the Endowment Rank.

The plea further alleges that said William C. Henry came to his death by self-destruction, and that in accordance with the contract entered into, said certificate became forfeited and void.

The defendant also filed a third plea, being the second special plea, in substance the same as the first with this exception :   That the third plea alleges that said law, rule and regulation was adopted on the 13th day of January, 1893, by the board of control of the Endowment Rank without stating that the same was ratified or adopted by the Supreme Lodge.

Appellee filed replications as follows :

First replication to the third plea avers that the board of control had no power to pass the said law or regulation, and did not pass the same on the 13th day of January, 1893, or at any other time, and said certificate did not become void. This replication concluded to the country and issue was joined thereon.

Appellee's replication to the second plea is the same in substance as the foregoing with this difference only, that it denied that the Supreme Lodge adopted or ratified the rule or law in question.   This replication also concluded to the country and issue was joined thereon.

Appellee also filed another or second replication to defendant's second plea, in which it was averred that at the time when William C. Henry committed self-destruction " he was of unsound mind, to the extent that he was not conscious of the moral or physical effects of what he was doing, and that he did the same when in a fit of frenzied madness, when he had no ability to form an intention, and did not voluntarily and intentionally destroy himself." To this replication a rejoinder was filed by the appellant traversing the same, and alleging that William C. Henry did not commit said act while in a fit of frenzied madness, but did commit self-destruction voluntarily and intentionally. Issue was taken upon said rejoinder and trial had by jury.

Verdict for plaintiff for $3,000.

Motion for new trial.

Grounds of motion : The court erred in excluding evidence from the jury, that the deceased, Henry, committed self-destruction as the result of mental disorder arising from present voluntary intoxication. Also excluding certified copies of proceedings and verdicts of coroner's inquest over the body of Henry and his wife; the court erred in instructing to find the issue for appellee; also in refusing to give each of the four instructions offered by the appellant; the verdict was unsupported by any evidence; the court erred in admitting improper evidence on the part of appellee; the court erred in excluding from the jury each instruction, record or proceeding, rule or regulation embraced within the stipulation of the parties, the substance of which is contained in the next paragraph.

Before the trial counsel for the parties stipulated in writing that on the trial certain instruments, records, printed volumes and other documents should be admitted in evidence by either party. These included constitutions of the Knights of Pythias and of the Endowment Rank and proceedings of both bodies at various times; also the general laws of the Endowment Rank; also the application of William C. Henry filed with appellee's second plea should be considered in evidence without further proof. It was, how-

ever, provided in said stipulation that the terms thereof were not to conclude either party as to the legal effect or legality of any of such evidence, but only render it easy of proof and evidence of what it purports to be on its face, by leaving its legal effect to be determined by the court at the trial. There is no controversy whatever in this case as to the regularity of proof under said stipulation, only as to the effect of the evidence when admitted.

Appellee proved the death of William C. Henry, and his wife, Louisa, afterward, and that she left surviving her two children. Appellee also proved that William C. Henry paid up all his dues to the order, or they were paid on his behalf up to the time of his death. The daughter of the deceased parties testified that her father came home on the evening before her mother died, about a quarter to five. Her mother was out riding when her father came home. On cross-examination, defendant's counsel asked witness " What happened after that ? " Plaintiff objected, and the court sustained the objection. We may here state in order to save time that all rulings of the court hereinbefore or hereinafter referred to were, at the time the same were rendered, excepted to by appellant.

It was proven by E. A. Baxter, sheriff of Sangamon county, that he, being informed that Mrs. Henry was shot, went, about seven the next morning, to where William C. Henry's body was lying. Witness was called just after Henry shot his wife. Henry was dead. Right hand raised up. Revolver lying close by there and an open knife. Cut across the wrist.

In the testimony of Martha Horsch, it is shown that the deceased, Henry, was ordinarily a very intelligant man, and a good locomotive engineer, but something became wrong with him. Witness saw him one or two evenings before he died. He was under the influence of liquor. Mrs. Henry sent for witness. He was going to clean out the house. Witness found him on the floor and picked him up and put him to bed.

Charles Shriver testified also about occasional strange-

ness on the part of William C. Henry. Testimony in
regard to the mental condition of Henry was given by George
Hoffman, who was also employed by the Wabash Railroad.
This man was very intimate with the deceased. Knew him
thoroughly. His strangeness arose from intoxication.
When under the influence of liquor he was very quick tem-
pered—quarrelsome disposition—although he talked very
good. He would talk and quarrel and witness knew when
he was under the influence. Next day he would not
remember anything and begged pardon. He was different
from other drunk men. He would not walk heavy or stag-
ger. He was not that way. Would walk straight and had
a quarrelsome disposition about him. Liquor affected him
differently from ordinary men. Had been discharged for
drunkenness. Wanted to stop every place where a station
was, to get liquor. Wanted to fight every man on the
train. This was several years before the company took
him back. He knew how liquor affected him and talked
about it. Three or four months afterward he was again
drinking. Witness saw him in grocery three or four days
before the killing. There was a saloon there. He was
under the influence then. Could only know when these
spells were on him by his quarrelsome disposition. He
did not get off his legs or lose control of his body. Talked
clearly but acted quarrelsome. Saw him in Elshoff's store
three to five days before murder. Smell of liquor con-
vinced witness he was drunk and said to him, "Bill, you
have been drinking again." This made him mad and he
lost control of his temper. Witness glided away. Next
day he apologized.

J. W. Asey testified that he saw the body between six
and seven on the 4th of October, 1895, probably dead some
hours. Body stiff. Witness saw the man the night before,
just this side of where he found him. Probably fifty yards
off. Passed very close to shock of corn. Looked up and
discovered body. Witness had seen the man go behind the
shock the night before, and in the morning he looked to see
if the body was there. Right hand kind of up, resting his

head partly on it.   Pistol lying on the ground under where the hand stuck up.   Saw a knife there.   Think it was under his head.   It was open.   Wound in the temple like a pistol wound.   Saw him go behind the shock the evening before, about half past six.

Defendant introduced, under  stipulation, report of the Board of Control of the Knights of Pythias, found in the record and proceedings of convention of  Supreme Lodge 1893 and 1894, the session of 1894 having been held in Washington City, August 28 to September 8, 1894.   The report of the board of control set forth reasons why losses arising to the order from suicide should be guarded against. Gives reasons and sets forth that in the preceding fifteen months, claims amounting to $63,000, arising out of suicides, had occurred, and the safety of the mortuary fund was thereby in danger.   Also that the board had amended the laws providing that in the event of self-destruction the certificate should be void.   To that end the said board on January 12 and 13, of 1893, had amended section one, article six, of the general laws, by adding to the end of said section as follows :   "The now law, rule or regulation thus here set forth has been already given in full in the pleas of the defendant and need not be repeated."

It was referred by the Supreme Lodge to committee on endowment rank.   The reports of the committee on endowment rank were taken from the table and adopted.   The appellee also introduced the law as adopted by the board of control in the revised  edition of the general laws, March 1 to 18, 1894, being the same law hereinbefore referred to.   The law last referred to being offered by the appellant, the appellee objected, and the court sustained the objection, so that the law in question was withheld from the jury.

Appellant introduced section nine, article eight, of the Constitution of 1890 of the Endowment Rank, authorizing the board of control to enact laws, rules and regulations and to alter and amend the same.   Also section five, article two, of the same constitution; it empowers the board of

control to. enact, alter and amend laws and regulations necessary to govern the same. Also the Constitution of the Supreme Lodge of 1890, 1892 and 1894, and the Constitution of the Endowment Rank. Constitution provides that the supreme body shall have power to establish an endowment rank and to create a board of control for the government thereof; that said board shall have entire control of said endowment rank. Board empowered to grant warrants to establish sections of endowment rank and to enact, alter and amend all laws and regulations necessary.

Constitution of 1894. This constitution appears in the larger pamphlet and is made part of the record, the first page thereof being numbered at the foot 6955.

In article seven, sections fifteen, sixteen, seventeen and eighteen on head page 6961, special directions are given as to the methods of legislation to be pursued by the order. Every proposition should be read three times on a different day; the majority of all members necessary to pass any proposition; all statutes to take effect after sixty days.

Appellee offered in evidence the two applications filed with plaintiff's pleas, one of them being the application on which policy sued on was issued. Appellant objected and court withheld ruling. Appellant called Louisa, daughter of William C. Henry, who formerly testified. Witness stated that she was at home on the evening of October 3, to which she had before testified. And then the following question was put to her: " If your father came home at that time, or about that time, you may tell the jury what happened there in your presence." Appellee objected and the court sustained the objection and refused to permit the evidence to go to the jury. Appellant then offered in evidence the verdict of the coroner's jury in the cases of both the deceased, the wife, Louisa M. Henry, and her husband, William C. Henry. Verdicts in substance are as follows: As to the wife, that she came to her death by a revolver wound fired by her husband, William C. Henry, while under the influence of liquor. As to her husband, that he came to his death by a revolver shot. Both verdicts were

objected to by appellee. Objections sustained by the court. Appellant rested.

By way of rebuttal appellee introduced charter of Supreme Lodge of August 5, 1890, as follows: " That the following additional section, to be known as section nine, be added to the act of incorporation as amended, viz.: ' That the Supreme Lodge shall have power to establish the Uniform Rank and the Endowment Rank upon such terms and conditions and governed by such orders and regulations as to the said Supreme Lodge may seem proper.' "

Appellee also introduced the report from the committee on endowment rank of the nineteenth convention, 1896, reporting that, under the constitution of 1894, the Supreme Lodge had no power to delegate to another body the right to legislate on any subject, and that such action, if taken, is null and void, and recommending the enactment by the supreme body of the suicide law in question.

Thereupon the court, on motion of the appellee, excluded all evidence offered by the appellant of the acts and proceedings of the board of control of the Endowment Rank and the Supreme Lodge, and the Constitution of 1890, 1892 and 1894; and the court also excluded the application offered in evidence.

The appellant asked the court to give the jury the following instructions:

1. The plaintiff in this case admits that the deceased, William C. Henry, committed self-destruction, and the defendant is not required to prove this fact.

2. If the jury believe from the evidence that the deceased committed self-destruction by reason of mental derangement occasioned by existing voluntary intoxication, then such act is not excusable because of insanity, and the plaintiff can not recover in this action.

3. The jury are further instructed that the law presumes every man to be sane until the contrary be proven, and the burden of making such proof rests upon the party alleging such insanity. And the fact of committing self-destruction does not of itself establish the insanity of such person.

4. The jury are instructed that if they believe from the evidence that the deceased, William C. Henry, committed self-destruction while in a sane condition, then they will find for the defendant, without regard to any rule or law adopted by the board of control, or by the Supreme Lodge, or claimed to be so adopted.

But the court refused to give said instructions, and thereupon the court gave the jury the following instruction:

" The court instructs the jury to find the issues for the plaintiff and to assess his damages at the sum of $3,000, and the form of your verdict may be: " We, the jury, find the issues for the plaintiff and assess his damages at the sum of $3,000.' "

Thereupon the jury found a verdict for the appellee, and the appellant filed its motion for a new trial. Motion overruled and judgment on verdict for $3,000.

From the exceptions taken, and the errors assigned on this record, the legal questions presented, upon which the merits of this case rest, are: First, if William C. Henry committed self-destruction while sane, did that fact avoid the policy? Second, did the stipulation set forth on the face of the policy authorize the " Board of Control of the Endowment Rank " of appellant, to adopt the rule, law or regulation providing that all policies should be void in case the assured committed self-destruction, whether sane or insane, so as to make it apply to the policy sued on in this case?

As to the first question above stated, we think the law is, that where a policy contains no provision making suicide or self-destruction by the assured a forfeiture of the policy, and makes the indemnity under it payable to some one other than the assured, or his personal representative, then intentional self-destruction by the assured, while he is sane, does not avoid the policy. But, where such a policy is by its terms payable to the assured, or his personal representative, then intentional self-destruction, while sane, will avoid the policy. Northwestern Benevolent and Mutual Aid Ass'n v. Wanner, 24 Ill. App. 357.

The reason why the estate of a sane man, who takes his own life intentionally, can not recover is, that to so permit would enable a man by his own wrongful act to have his estate make a profit thereby.

As to the second question presented we will say, that from the evidence in this record it does not appear that the Supreme Lodge did, before the death of William C. Henry, adopt the law, rule or regulation for the government of members of the Endowment Rank in the words and figures following: "If the death of any member of the Endowment Rank heretofore admitted to the first, second, third or fourth classes, or hereafter admitted, shall result from self-destruction, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics or opiates, or in consequence of a duel, or at the hands of justice, or in violation or attempted violation of any criminal law, then in such case the certificate issued to such member and all claims against said Endowment Rank, on account of such membership, shall be forfeited." As by its plea it has averred.

But it does appear from the evidence that the board of control of the Endowment Rank of appellee (which board of control, from the evidence, was the board that supervised the business of the insurance department of appellant), before the death of William C. Henry, and after the issuance of the policy sued on in this case to him, did what they could do to enact said law, rule or regulation above mentioned; but we hold that said board of control was but an agency of appellant, to whom appellant could not delegate its legislative functions to enact a law that would inject into the policy sued on, a provision making suicide, etc., avoid it. See Supreme Lodge Knights of Pythias v. La Malta, 95 Tenn. 157, 31 S. W. Rep. 493, decided by the Supreme Court of Tennessee, which is a case just like this, and we fully concur in the decision, as well as the reasoning of that court, as set forth in its opinion in that case.

It is contended, however, by appellant, that the policy sued on reserved the power of legislation to the board of control as well as the Supreme Lodge, and action by either of those bodies, was ample under the express consent of the deceased.

But we think the language used in the policy sued on, to wit, "The full compliance by the assured with all the laws governing this rank, now in force, or that may hereafter be enacted by the Supreme Lodge of the Knights of Pythias of the World, or the board of control of the Endowment Rank," could not be construed to confer legislative function upon the board of control, the mere agency of appellant, to the extent of changing the contract of insurance sued on, and injecting conditions therein by which the same might become void—the legislative function restricted by the constitution of appellant to appellant itself; it being a well understood rule of law that forfeitures are not favored in law, and will not be enforced, except where the acts which would make a forfeiture are clearly shown.

Inasmuch, therefore, as the record in this case discloses that the trial court held correctly in its rulings on the evidence, instructions to the jury and its judgment, we affirm its judgment herein.   Affirmed.