MUTUAL LIFE INSURANCE COMPANY OF NEW YORK v. GULLER, GUARDIAN.

[No. 9,508. Filed April 2, 1918. Rehearing denied June 28, 1918. Transfer denied November 21, 1918.]

1. INSURANCE.—*Contracts.*—*Construction.*—The rule that it is the duty of the court to ascertain the intention of the parties and to give effect thereto, applies to insurance as well as to other contracts, and the words used will be given their plain, ordinary and popular meaning, unless there is something in the contract to indicate a different meaning. p. 549.

2. INSURANCE.—*Life Insurance.*—*Construction of Policy.*—*Suicide.* —*"By his Own Act".*—A provision in a life insurance policy, avoiding it if the assured should die "by his own act," refers to suicide only, and does not include death of a woman from septicemia following an operation to produce a miscarriage. p. 549.

3. APPEAL.—*Review.*—*Ruling on Demurrer.*—*Insufficient Memo-*

*randum.—Scope of Review.—Statute.*—Although §344 Burns 1914, Acts 1911 p. 415, providing that when a demurrer to a complaint is filed for want of facts, a memorandum shall be filed therewith stating wherein the pleading is insufficient, applies to a demurrer to an answer, it is not reversible error to sustain a demurrer to an answer accompanied by an insufficient memorandum if such ruling was correct, since the court on appeal, may go behind the memorandum to determine the correctness of the ruling in order to sustain the trial court. p. 551.

4. INSURANCE.—*Life Insurance.—Death From Illegal Operation.—Insurer's Liability.—Public Policy.*—Where a policy of life insurance, procured and issued in good faith, was payable to beneficiaries, with the right reserved in the insured to change the same, so that they acquired a defeasible vested interest in the policy at the time of its issuance, public policy does not prohibit recovery on the policy by such beneficiaries where insured died from septicemia resulting from a criminal operation, the policy not expressly providing against liability for death from such a cause. p. 551.

From Gibson Circuit Court; *Simon L. Vandeveer,* Judge.

Action by Nicholas C. Guller, as guardian of Mary M. Guller and others, against the Mutual Life Insurance Company of New York. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Morton C. Embree, Lucius C. Embree* and *Frederick S. Allen,* for appellant.

*Henry Johnson* and *Byron M. Johnson,* for appellee.

BATMAN, P. J.—This is an action commenced by appellee to recover on a policy of life insurance, issued by appellant on the life of one Grace Guller, now deceased, in the sum of $1,000, in which appellee's wards, Mary M. Guller, John D. Guller, and Jewel N. Guller, were named as beneficiaries. The complaint is in a single paragraph in the usual form, a copy of such policy being made a part thereof by

exhibit.   Appellant filed an answer in three para-
graphs.   Each of said paragraphs contains the fol-
lowing admissions and allegations of facts: It is ad-
mitted that the policy in suit was issued on March
14, 1914; that appellee's said wards were named as
beneficiaries therein; that all the premiums due there-
on had been paid; and that due proofs of the death of
said Grace Guller had been furnished appellant.   It
is alleged that on the date on which said policy was
issued the said Grace Guller was a married woman;
that subsequently, on November 15, 1914, the said
Grace Guller, with the intent then and there and
thereby to procure her miscarriage, voluntarily sub-
mitted to a criminal operation, and caused a criminal
operation to be performed upon her, the said Grace
Guller then and there being pregnant; that said
criminal operation was dangerous to life, and at the
time known by the said Grace Guller, to be so; that
said operation was not performed by a physician
for the purpose of saving. the life of either the
said Grace Guller, or of the child with which she was
pregnant; that as a result of said criminal operation
the said Grace Guller did miscarry, and thereafter, on
December 2, 1914, died of septicemia, following and
caused by such miscarriage; that her death resulted
directly from, and was proximately caused by her
own act, in procuring said criminal operation and
voluntarily submitting thereto; that as soon as appel-
lant became cognizant of the facts above stated, to
wit, on October 6, 1915, it tendered to appellee as
such guardian, in good and lawful currency of the
United States of America the sum of $22.85, the same
being the amount of the premium paid by the said
Grace Guller on said policy, together with interest

thereon at the rate of six per cent. per annum from April 18, 1914, to October 6, 1915; that said tender was refused by appellee; and that it has paid said money into court for the use of appellee.

The said first paragraph of answer contains the following special allegations, not found in either of the other paragraphs: "The defendant says, however, that the plaintiff ought not to have and recover in this action for the reason that said policy of insurance was issued upon, and contained as a part thereof, and as a part of a contract of the defendant with the said Grace Guller, certain terms and conditions in respect to the liability of the defendant to the beneficiaries thereunder, in the event of the death of the said Grace Guller, among which was the following express condition, namely: The company shall not be liable hereunder in the event of the insured's death by his own act, whether sane or insane, during the period of one year after the date of the issue of this policy, as set forth in the provisons of the application endorsed hereon or attached hereto."

The second paragraph of answer contains the following special allegations not found in either of the other paragraphs: "The defendant says, however, that the plaintiff ought not to have and recover in this action for the reason that said policy of insurance was issued upon, and in pursuance of, a written application therefor made to it by the said Grace Guller, a copy of which is hereto attached and made a part of this answer, marked 'Exhibit A'; that a copy of said application was made a part thereof, and a part of the contract of insurance thereby evidenced, and said policy and said application became and constituted the entire contract between said defendant and the

said Grace Guller; and the defendant charges that said policy was issued in consideration of, and its validity depended upon, the statements, agreements, conditions and warranties therein, made by the said Grace Guller, and each one of them, and that among said statements, agreements, conditions and warranties was the following express understanding and agreement, to wit: It is understood and agreed that the risk of death will not be covered by the policy if such death occur by my own act, whether sane or insane, during the period of one year next following the date of issue.''

The third paragraph of answer contains the following special allegations, not found in either of the other paragraphs: ''The defendant further says that the act of the said Grace Guller, in so submitting to said operation was in violation of law, and was grossly immoral; that a death so caused was not insured against by said policy; that by reason of the acts above stated, said policy has become, and is now, null and void; and that it is contrary to public policy to permit a recovery thereon.''

To each of said paragraphs of answer appellee filed a demurrer for want of facts, accompanied by a memorandum of the grounds on which the same was based. This demurrer was sustained as to each of said paragraphs, and an exception was duly reserved. Appellant refused to plead further, and thereby elected to stand upon its answer. Judgment was thereupon rendered against appellant upon the pleadings in the sum of $1,019 and costs. From this judgment appellant prosecutes this appeal, and has assigned the sustaining of appellee's demurrer to each

of its paragraphs of answer, as the errors on which it relies for reversal.

The sufficiency of the first and second paragraphs of such answer involves the same question, and will be considered together. It will be noted that the first paragraph is based on a clause of the policy, which provides against liability "in the event of the insured's death by his own act," while the second paragraph is based on a clause of the application, which provides against liability, "if such death occur by my own act." The question arises over the meaning of the words "death by his own act" and "death * * * by my own act." Appellee contends that they mean death by suicide and nothing more; that the death of the insured in the manner and from the cause alleged was not death by suicide; and, therefore, such paragraphs are insufficient. Appellant contends that the words in question have a broader meaning than the term "suicide"; that they embrace every case of death by one's own act, except death by accident, or from an act which, at the time it was entered upon, was not expected or intended to result in death; that death in the manner and from the cause alleged comes within their meaning; and therefore such paragraphs are sufficient.

In construing a contract it is the duty of the court to ascertain the intention of the parties, and give effect to such intent. In so doing words used

1. are to be understood in their plain, ordinary and popular sense, unless there is something in the contract to indicate a different meaning.

2. *Straus* v. *Yeager* (1911), 48 Ind. App. 448, 93 N. E. 877. This rule applies to insurance as well as to other contracts. *Modern Woodmen, etc.* v.

*Miles* (1912), 178 Ind. 105, 97 N. E. 1009. It is apparent that when the words in question are so considered, they must be held to mean suicide. Such interpretation is evidently in accord with the popular understanding, and, as there is nothing to indicate the contrary, such meaning must be accepted. The courts of other jurisdictions have ascribed such meaning to them when so used. *Supreme Lodge, etc.* v. *Gelbke* (1902), 198 Ill. 365, 64 N. E. 1058; *Mutual Life Ins. Co.* v. *Wiswell* (1896), 56 Kan. 765, 44 Pac. 996, 35 L. R. A. 258. In the case last cited the court said, on page 768: "But the courts are in general accord in holding that the words of a condition avoiding the policy if the assured shall die 'by his own hand' or 'by his own act' are equivalent to a proviso against suicide or intentional self-destruction." This is in accord with the view of this court, as expressed in the case of *North American Union* v. *Oleske* (1917), 64 Ind. App. 435, 116 N. E. 68, where it is held that the words "die by his own hand or act" mean suicide. The conclusion we have reached finds support in the fact that the clause of the policy under consideration has for a heading the word "suicide." This was also true in the case last cited, and such fact was held to be significant in determining what the parties understood to be the meaning of the words quoted. While the word "suicide" does not appear as a heading to the clause in the application on which the second paragraph of answer is based, the language used is of similar import to that used in the clause of the policy on which the first paragraph of answer is based, and must be held to have the same meaning. The cause of death described in each the first and second paragraph of answer is the

same. It did not result from suicide, as the essential elements of intention and expectation are absent. *Northwestern, etc., Ins. Co.* v. *Hazelett* (1886), 105 Ind. 212, 4 N. E. 582, 55 Am. Rep. 192. For the reasons stated it follows that the court did not err in sustaining the demurrer to either the first or second paragraph of such answer.

Appellant contends that the demurrer to the third paragraph of answer presents no question, because of the insufficiency of the memorandum 3. filed with the demurrer thereto. This contention cannot be sustained. While it is true that §344 Burns 1914, Acts 1911 p. 415, has been construed to apply to an answer as well as a complaint, it does not follow that a cause should be reversed because the court sustains a demurrer to a paragraph of answer where the memorandum is insufficient. If the ruling thereon was correct, no error was committed, and this court may look beyond the memorandum for the purpose of ascertaining such fact, in order to sustain the ruling of the trial court. *Bruns* v. *Cope* (1914), 182 Ind. 289, 105 N. E. 471; *Parker* v. *Hickman* (1916), 61 Ind. App. 152, 111 N. E. 649.

Appellant bases its third paragraph of answer on the ground of public policy. As preliminary to a consideration of the sufficiency of such para- 4. graph the following should be noted: (1) The policy in suit is made to mature on the death of the insured; (2) no limitations are placed on the cause of death, except suicide during the period of one year after the date of the issue of such policy; (3) the beneficiaries named in the policy are the children of the insured, subject to her right to change

the same; (4) there is no charge that such policy was procured or issued in contemplation of the commission of any unlawful act. It thus appears that this paragraph of answer involves a question that may be stated as follows: What effect is produced upon a policy of life insurance which has been procured and issued in good faith, and hence valid at its inception, where the death of the insured results from his criminal act, and such policy does not expressly provide against liability for death from such a cause? This question does not appear to have been determined in this state, but the principles involved have been considered and applied in many jurisdictions. In so doing the courts, as a rule, have taken into account two different classes of life insurance policies, one class being those policies made payable to the insured himself, or to his personal representatives by some appropriate designation, and the other class being those policies in which some third person or persons are designated as beneficiaries. The reason for this classification is based on the fact that the proceeds of the policies of the former class become a part of the insured's estate on his death, and is subject to the claims of his creditors, if not otherwise disposed of by the insured; while the proceeds of the policies of the latter class do not become a part of the insured's estate on his death, are not subject to administration by his personal representatives, but are payable to the designated beneficiaries direct, by virtue of a vested interest acquired in such policies at the time of their issuance. A failure to note such distinction will lead to confusion in considering the decided cases applicable to the question under consideration.

As a general rule, the courts hold that under the

former class of policies there can be no recovery, if the insured has intentionally caused his own death, although such policies may be silent in that regard. Some of such decisions are based on the doctrine that life insurance policies are contracts which involve the highest good faith of the contracting parties, and hence an insured may not hasten the event which matures the policy and profit thereby. Others are based on an implication that death from such causes is excepted from the conditions which create a liability. While still others are based solely on the grounds of public policy. Among the cases so holding for the reasons stated are the following: *Ritter* v. *Mutual Life Ins. Co.* (1898), 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693; *Davis* v. *Supreme Council, etc.* (1907), 195 Mass. 402, 81 N. E. 294, 10 L. R. A. (N. S.) 722, 11 Ann. Cas. 777; *Shipman* v. *Protected Home Circle* (1902), 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347; *Mutual Life Ins. Co.* v. *Kelly* (1902), 114 Fed. 268, 52 C. C. A. 154. The same principle has been applied to cases where the death of the insured was the result of his unlawful act, or was due to the commission of a crime resulting in the infliction of capital punishment. *Amicable Society* v. *Bolland* (1830), 4 Bligh N. S. 194; *Hatch* v. *Mutual Life Ins. Co.* (1876), 120 Mass. 550, 21 Am. Rep. 541; *Wells* v. *New England, etc., Ins. Co.* (1899), 191 Pa. St. 207, 43 Atl. 126, 53 L. R. A. 327, 71 Am. St. 763; *Burt* v. *Union Central Life Ins. Co.* (1902), 187 U. S. 362, 23 Sup. Ct. 139, 47 L. Ed. 216; *Northwestern, etc., Ins. Co.* v. *McCue* (1912), 223 U. S. 234, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57.

In regard to the latter class of policies, viz., those payable to designated third persons as beneficiaries,

the courts hold, as·a rule, that a recovery may be had, notwithstanding the insured has intentionally caused his own death, where the policies are silent in that respect. Such determination is usually based on the theory that such beneficiaries acquired a vested interest in such policies at the time of their issuance, and thereafter their rights cannot be affected, by the wrong of the insured, for whose acts they are in no way responsible. Among the cases so holding are the following: *Supreme Council, etc.* v. *Pels* (1903), 110 Ill. App. 409; *Supreme Lodge, etc.* v. *Kutscher* (1897), 72 Ill. App. 462; *Parker* v. *Des Moines Life Assn.* (1899), 108 Ia. 117, 78 N. W. 826; *Supreme Conclave, etc.* v. *Miles* (1901), 92 Md. 613, 48 Atl. 845, 84 Am. St. 528; *Kerr* v. *Minnesota, etc., Assn.* (1888), 39 Minn. 174, 39 N. W. 312, 12 Am. St. 631; *Fitch* v. *American, etc., Ins. Co.* (1875), 59 N. Y. 557, 17 Am. Rep. 372; *Grand Legion, etc.* v. *Beaty* (1906), 224 Ill. 346, 79 N. E. 565, 8 L. R. A. (N. S.) 1124, 8 Ann. Cas. 160; *Seiler* v. *Economic Life Assn.* (1898), 105 Ia. 87, 74 N. W. 941, 43 L. R. A. 537; *Morris* v. *State, etc., Assurance Co.* (1897), 183 Pa. St. 563, 39 Atl. 52; *Patterson* v. *Natural Premium, etc., Ins. Co.* (1898), 100 Wis. 118, 75 N. W. 980, 42 L. R. A. 253, 69 Am. St. 899; *Shipman* v. *Protected Home Circle, supra.*

The decided cases are not uniform in giving effect to the distinction between the two classes of policies as indicated. Thus decisions may be found which hold that a recovery ought to be permitted on policies of the former class, viz., those payable to the insured or his legal representatives, where there is no provision against liability for death resulting from the causes stated. The line of reasoning usually relied on in such decisions is to the effect that the insurer

has expressly agreed to pay on the death of the insured, without excepting death from such causes; that there is no adequate reason for disregarding the terms of the contract on the ground of public policy, and no more cause for inferring forfeiture of insurance, where death results from such causes, than for requiring attainder, or forfeiture of other property belonging to the insured. Among the cases to this effect are the following: *Collins* v. *Metropolitan Life Ins. Co.* (1908), 232 Ill. 37, 83 N. E. 542, 14 L. R. A. (N. S.) 356, 122 Am. St. 54, 13 Ann. Cas. 129; *Mills* v. *Rebstock* (1882), 29 Minn. 380, 13 N. W. 162; *Campbell* v. *Supreme Conclave, etc.* (1901), 66 N. J. Law 274, 49 Atl. 550, 54 L. R. A. 576.

On the other hand, there are cases which would indicate that third party beneficiaries ought not to recover, where death results from the causes under consideration, although the policy be silent in that regard. The line of reasoning usually relied on in such cases is to the effect that death from such causes is not a risk intended to be covered, or which could legally have been covered by the policy; and, if such be the case, it cannot be construed to cover where death results from such causes in favor of any beneficiary whatsoever. Among the cases so indicating are the following: *Mutual Life Ins. Co.* v. *Kelly, supra; Burt* v. *Union Central Life Ins. Co., supra; Ritter* v. *Mutual Life Ins. Co., supra; Northwestern, etc., Ins. Co.* v. *McCue, supra; Davis* v. *Supreme Council, etc., supra.*

A careful consideration of the principles involved and authorities cited leads us to conclude that whether the insured die from suicide while sane, or as the result of some unlawful act, or by legal exe-

cution or conviction of crime, the effect on an ordinary life insurance policy must be the same, where it is silent as to death from such causes. It is apparent that the authorities are not in harmony as to what the effect of death from such causes should be, but we are led to believe that the greater weight and better reason is in favor of permitting a recovery by third party beneficiaries, who have acquired a vested interest in such a policy which is silent as to the effect of death from the causes indicated. What effect death from such causes would have upon such a policy payable to the insured himself or to his personal representatives we need not and do not decide.

Directing our attention to the policy in suit, as shown by the exhibit filed with the complaint, we find that it is payable to third party beneficiaries, viz., appellee's wards, who are the children of the insured, with the right reserved in the insured to change such beneficiaries. The third paragraph of answer alleges that the insured's death resulted from a criminal act, concerning which the policy is silent. Under the conclusion we have reached, as stated above, it is clear that such answer is insufficient, provided the beneficiaries acquired a vested interest in such policy at the time it was issued, notwithstanding the right reserved in the insured to change the same. As pertinent to this question we find the law to be well settled that a beneficiary in an ordinary life insurance policy has an absolute vested interest therein from the date of its issuance, delivery, and acceptance, where such policy does not authorize a change of beneficiary. *Wilburn* v. *Wilburn* (1882), 83 Ind. 55; *Damron* v. *Penn, etc., Ins. Co.* (1885), 99 Ind. 478; *Masons', etc., Ins. Assn.* v. *Brockman* (1897), 20 Ind.

App. 206, 50 N. E. 493; *Indiana, etc., Life Ins. Co. v. McGinnis* (1913), 180 Ind. 9, 101 N. E. 289, 45 L. R. A. (N. S.) 192. But where such policy authorizes a change of the beneficiary by the insured, such interest is a defeasible vested interest. *Indiana, etc., Life Ins. Co. v. McGinnis, supra; Roberts v. Northwestern, etc., Ins. Co.* (1915), 143 Ga. 780, 85 S. E. 1043; *Holder v. Prudential Ins. Co.* (1906), 77 S. C. 299, 57 S. E. 853. It is further settled that where the policy reserves a right in the insured to change the beneficiary, it must be exercised in the specific manner provided therein in order to be effective. *Holland v. Taylor* (1887), 111 Ind. 121, 12 N. E. 116; *Mason v. Mason* (1903), 160 Ind. 191, 65 N. E. 585; *Farra v. Braman* (1908), 171 Ind. 529, 86 N. E. 843; *Indiana, etc., Life Ins. Co. v. McGinnis, supra.*

It is apparent that the beneficiaries acquired a defeasible vested interest in the policy in suit at the time it was issued. It might have been divested during the life of the insured by a change of the beneficiaries. There is no charge in the paragraph of answer under consideration to that effect. We must therefore assume that there was no such divesture, and that such interest continued up to the death of the insured and then became absolute. For the reasons stated we hold that the court did not err in sustaining appellee's demurrer to the third paragraph of answer.

We find no error in the record. Judgment affirmed.

NOTE.—Reported in 119 N. E. 173. See under (2, 4) 25 Cyc 875.