Plaintiff, Ernest Payne, the designated beneficiary in three policies of insurance on the life of Josephine Payne, brought this suit against the insurer, Louisiana Industrial Life Insurance Company, for the sum of $565, with interest, the aggregate amount of the three policies.
Each policy provides in effect that no benefits shall be payable or recoverable should the insured die as the result of a violation of the law, and that in such case the company is liable only for the amount of the premiums paid. The insurer interposed two defenses, (1) that Josephine Payne died as a result of an illegal operation, an abortion, which is a crime under the laws of this state, and that insured herself was an accessory before the fact to the crime, and (2) that insured's act causing death was of a heinous and reprehensible *Page 445 
character, and public policy precluded defendant from insuring her against its consequences. From a judgment in plaintiff's favor, this appeal has been taken by defendant.
The matter proceeded to trial in the court below upon an agreed statement of facts, which is to the effect that the policies were issued by defendant and plaintiff is therein designated as beneficiary; that Josephine Payne died on December 31, 1945, at which time all premiums had been paid on the policies; that her death resulted from acute tetanus following a criminal abortion, to which she had submitted voluntarily.
Defendant's counsel first contends that deceased was an accessory to the abortion, which is a crime, and that the provisions of the policies absolve defendant from liability.
Abortion is defined and made punishable by art. 87 of Act 43 of 1942 (La.Cr. Code), which reads:
"Abortion is the performance of any of the following acts, for the purpose of procuring premature delivery of the embryo or fetus:
"(1) Administration of any drug, potion, or any other substance to a pregnant female; or
"(2) Use of any instrument or any other means whatsoever on a pregnant female.
"Whoever commits the crime of abortion shall be imprisoned at hard labor for not less than one nor more than ten years."
[1] It is clear that it was the Legislature's intention to make the person who feloniously administers a drug or potion, or any other substance to a pregnant female, or who uses any instrument, or any other means whatsoever on a pregnant female, for the purpose of procuring a premature delivery of the embryo or foetus, guilty of the crime of abortion, but it should be noted that the language used is not broad enough to include within its scope a female who consents or submits herself to an abortion. It is true that a female who voluntarily becomes the subject of an abortion, without justifiable medical reason, is guilty of a detestible and revolting offense against the laws of nature, which is universally condemned, but notwithstanding this, such woman is not guilty of any criminal offense known to the laws of this state.
It has been said that one may be guilty of a great moral wrong, while not guilty of a crime. See Landry v. Independent Nat. Life Ins. Co., 17 La. App. 10, 135 So. 110, and Simmons v. Victory Industrial Life Ins. Co. of Louisiana, 18 La. App. 660, 139 So. 68.
This court, in the case of Simmons v. Victory Industrial Life Ins. Co. of Louisiana, supra, in which Judge Higgins was the organ, passed upon the claim of a beneficiary to recover on an insurance policy, where death resulted fram an abortion superinduced by drugs self-administered by the insured. The policy in that case exempted the insurer from liability if the insured shall "die by his or her own criminal act." We held that a female who inflicted abortion upon herself was not guilty of a crime under the law, as it then existed, and that the exclusion in the policy did not relieve the defendant of liability. We said:
"Having come to the conclusion that, even if the deceased had purposely brought on, by the use of drugs, the abortion which resulted in her death, she was not guilty of violating any criminal law of this state, the provision of the policy in question is inapplicable."
Counsel insists that Simmons v. Victory Industrial Life Ins. Co. of Louisiana, supra, is readily distinguishable from the instant case in three particulars: (1) In the Simmons case there was no crime whatever, while in the case we are now considering there was a criminal abortion (a crime) performed with the knowledge and consent of the insured; (2) in the Simmons case the policy clause excepted death resulting from the insureds' criminal act, while the policies under consideration now are not enforceable when death results from anyone's criminal act, whether it be that of the insured or of another; and (3) in the Simmons case the question of denying recovery for reasons of public policy was not raised or considered.
[2-4] Counsel has not favored us with any authorities supporting his first two contentions, *Page 446 
and our research fails to reveal any. The provision that no benefits shall be payable if the insured should die as a result of a violation of the law clearly contemplated, in our opinion, that the insurer would be absolved from liability only where an unlawful act perpetrated by the insured caused her death. This is the only reasonable construction that can be placed upon the language, for if we should attribute to it the construction contended for, absurd situations would ensue. For instance, if it was the intendment that the insurer would not be liable if the criminal act causing death was that of a third person, a case might arise where an innocent policy holder, without provocation, was feloniously killed by another, in which event the insurance company would be relieved of paying the policy, as it could be said the death arose from a criminal act, even though the insured played no part therein, except being the victim. A provision of a life insurance policy relieving the insurer from liability, where death results from a violation of the law, is to be given a reasonable and common sense construction, and we believe the exclusion of liability clause in question was intended to apply only in cases where death resulted from a violation of the law committed by the insured. Moreover, if there is ambiguity it should be resolved against the insurer.
Counsel argues strenuously that defendant should be exonerated because the act causing insured's death was of a heinous and abhorrent character, and that public policy precluded the defendant from insuring her against its consequences, and defendant cannot be held liable on the policies. There is no ruling of any appellate court in Louisiana touching this exact point. However, in 1908 this court decided the case of Rhodes, Adm'r, v. Metropolitan Ins. Co., 6 Orleans App. 47, which is somewhat analogous. The facts were that defendant issued a policy of insurance covering the life of Charles Foley, and payable to his estate; several years afterward the insured was convicted of murder and executed. The insurance company resisted payment upon the ground that death by legal execution is not such a death as was contemplated by the parties to the contract, and that public policy forbids recovery when death ensues by reason of legal execution. The policy made no mention of death by capital punishment as being either included or excepted from the risk. In holding for defendant, the court said:
"In 1830 Lord Linderhurst, as organ of the House of Lords in the so-called Fauntleroy case, reported at 4 Bligh (N. S.) 194, says:
" 'It appears to me that this resolves itself into a very plain and simple consideration. Suppose that, in the policy itself, the risk had been insured against — that is, that the party insuring had agreed to pay the sum of money, year by year, upon consideration that, in the event of his committing a capital felony, and being tried, convicted and executed for that felony, his assignees shall receive a certain sum of money — is it possible that such a contract could be sustained? Is it not void upon the plainest principles of public policy?
" 'Would not such a contract (if available) take away one of those restraints operating on the minds of men against the commission of crime — namely, the interest we have in the welfare and prosperity of our connections? Now if a policy of that description with such a form of condition inserted in it, in express terms, cannot, on the ground of public policy be sustained, how is it to be contended that, in a policy expressed in such terms as the present, and after the events which have happened, we can sustain such a claim?
" 'Can we, in considering this policy, give to it the effect of that insertion which, if expressed in terms, would have rendered the policy as far as that condition went, at least, altogether void?'
"The Supreme Court of the United States, in Burt v. Ins. Co.,137 U.S. 362, 365, 23 S.Ct. 139, 47 L.Ed. 216, approves the English case, and goes on to say:
" 'It cannot be that one of the risks covered by a contract of insurance is the crime of the insured; there is an implied obligation on his part to do nothing to wrongfully accelerate the maturity of the policy. *Page 447 
" 'Public policy forbids the insertion in a contract of a condition which would tend to induce crime, and as it forbids the introduction of such a stipulation it also forbids the enforcement of a contract under circumstances which cannot legally be stipulated for.'
* * * * * * * * * * * * * *
"We deem it advisable to place our jurisprudence in accord with the views announced in the cases above cited."
Defendant cites three cases from other jurisdictions, in each of which an illegal operation was the cause of death, and contends that they are authority for the proposition which he advances.
In Hatch, Adm'r, v. Mutual Life Ins. Co., 120 Mass. 550, 21 Am.Rep. 541, the court declined to enforce payment of the avails of a policy issued on the life of plaintiff's wife, who died as the result of an illegal operation to which she submitted without any justifiable medical reason with intent to cause an abortion. One of the defenses was that the plaintiff (the husband of the insured) was so far connected with the cause of the death that he was not entitled to recover. The evidence showed that the operation was dangerous to a woman's life, which fact was well known by the deceased and her husband. The court denied recovery on the ground that public policy would preclude the issuance of the contract of insurance, saying:
"It is therefore established that this voluntary act on her part, condemmed alike by the laws of nature and by the laws of all civilized states, and known by her to be dangerous to life, did actually result in death. And the question is raised, whether, for a death so caused, the defendant is liable.
"We are of opinion that no recovery can be had in this case, because the act on the part of the assured causing death was of such a character that public policy would preclude the defendant from insuring her against its consequences; for we can have no question that a contract to insure a woman against the risk of her dying under or in consequence of an illegal operation for abortion would be contrary to public policy, and could not be enforced in the courts of this Commonwealth."
Another of the cited cases is Wells v. New England Mut. Life Ins. Co. of Boston, Mass., 191 Pa. 207, 43 A. 126, 127, 53 L.R.A. 327, 71 Am.St.Rep. 763, wherein plaintiff was the administrator of the insured, and was denied a recovery. The insured's act in submitting to the abortion came within the exclusion clauses of the policy, but the court based its opinion solely on the ground that to permit a recovery would be contrary to public policy, holding:
"* * * We do not think it can be questioned that the woman who solicits the commission of the offense, and submits her body for its perpetration, can be regarded as other than a participant in its commission, and is therefore criminally responsible. Viewed in that light, in the present instance, the deceased comes directly within the operation of the prohibitory clause of the policy; for she was actually engaged in the violation of the criminal law of Massachusetts, where the contract was made, and of Pennsylvania, where she was at the time the offense was committed. The act was also highly immoral and illegal, as well on her part as on the part of the person who performed the operation; and therefore it would be contrary to public policy to permit a recovery. Upon the whole case, it was the plain duty of the court below to direct a verdict for the defendant."
In Jacob v. Prudential Ins. Co. of America, 256 App. Div. 884, 9 N.Y.S.2d 27, affirmed, 281 N.Y. 623, 22 N.E.2d 177, a husband sought recovery of accidental death benefits on a contract insuring the life of his wife, who submitted herself to an abortion and died as a result of the wall of the uterus having been punctured during the course of the operation. A recovery was denied, the court, in a per curiam, observing:
"Judgment and order reversed on the law with costs, and complaint dismissed, with costs, on the ground that the accident, which was the puncture of the wall of the uterus during the performance of an abortion, occurred while the assured was submitting to an unlawful abortion, a heinous crime, and that a recovery on the policy is *Page 448 
therefore against public policy. Hatch v. Mutual Life Ins. Co.,120 Mass. 550, 21. Am. Rep. 541; Wells v. New England Mutual Life Ins. Co., 191 Pa. 207, 43 A. 126, 53 L. R.A. 327, 71 Am.St.Rep. 763; Collins v. Metropolitan Life Ins. Co.,27 Pa. Super. 353."
In addition to the authorities relied upon by defendant, there are many others from sister jurisdictions, which are pertinent to the proposition now being considered. We also find the case of Mutual Life Ins. Co. of New York v. Guller, 68 Ind. App. 544, 119 N.E. 173, which involved a death caused by an abortion.
An examination of the authorities relied upon by defendant reveals that in each of the Hatch and Wells cases the policies were undoubtedly payable to decedent's estate, for each plaintiff sued in the capacity of the deceased's administrator. In the other case, Jacob v. Prudential Ins. Co. of America, the husband of the assured appears to have sued in his individual capacity, and sought recovery on that portion of the policy granting double indemnity for death occurring through accidental means. The claim was founded on the premise that the accident occurred to the insured during her submission to the illegal abortion. Apparently no question was raised with respect to the payment of single benefits.
The instant case can be distinguished from the cited cases. Here the plaintiff is suing for single benefits on a life insurance policy. The record before us does not show what relationship, if any, existed between him and Josephine Payne, nor is it shown that he had any knowledge of the insured's intention to submit to the operation, or played any part in it. Plaintiff is the designated beneficiary, and seeks the recovery individually and for his own account.
The question presented for our consideration is this: Should the plaintiff here, who is the named beneficiary of life insurance policies, be allowed to enforce collection of the policies where the death of the insured resulted from a criminal operation, the policies not expressly providing against the insurer's liability for death from such a cause?
It seems to be the general rule in other jurisdictions, in similar situations, for the courts to take into account two different classes of life insurance policies, one class being those policies made payable to the assured's estate, or to his personal representative by some appropriate designation, and the other class being of those policies in which some third person is nominated and designated as beneficiary. The theory for placing policies of insurance in these two categories is based on the premise that the proceeds of policies in the former class become a part of the insured's estate on his demise, while the proceeds of policies in the latter class do not constitute an asset of the insured's estate on his death, and are not subject to administration by his estate representative, but are payable directly, and as a matter of right, to the designated beneficiaries, who receive the avails as the result of a vested interest acquired at the very moment of the issuance of the policy.
[5] The weight of authority appears to be to the effect that a person or his estate should not profit as a result of his own wrongdoing, and that when the maturity of an insurance contract made payable to the estate, or to the personal representative of the insured, is hastened or accelerated by his wrongdoing (such as suicide, or the commission of a crime resulting in the infliction of capital punishment, etc.), even in the absence of any prohibitory clause in the contract, no recovery can be had on the policy. This, it has been reasoned, is because the parties to the contract could not have contemplated such contingency, and the insured cannot, by his own act, be permitted to enlarge and increase the obligations undertaken by the insurer.
It is otherwise in cases involving policies in the latter class, i. e., those running in favor of third persons as beneficiaries, on the theory that the beneficiaries, having acquired a vested interest in the policies, cannot be either divested thereof or jeopardized therein, after issuance of the policies, by any wrongful act of the insured not excluded from coverage, for which they are not responsible.
In the well considered opinion in Mutual Life Ins. Co. of New York v. Guller, supra, *Page 449 
the insured died as the result of an abortion (on which cause of death the policy was silent), and the guardian of the beneficiaries brought suit to enforce payment of the insurance. The rights of a designated beneficiary to collect insurance, where the insured's death resulted from an illegal act, was lengthily discussed by the court, as follows [68 Ind. App. 544, 119 N.E. 175]:
"As a general rule, the courts hold that under the former class of policies there can be no recovery, if the insured has intentionally caused his own death, although such policies may be silent in that regard. Some of such decisions are based on the doctrine that life insurance policies are contracts, which involve the highest good faith of the contracting parties, and hence an insured may not hasten the event which matures the policy and profit thereby. Others are based on an implication that death from such causes are excepted from the conditions which create a liability. While still others are based solely on the grounds of public policy. Among the cases so holding for the reasons stated are the following: Ritter v. Mutual Life Ins. Co., 169 U.S. 139, 18 S.Ct. 300, 42 L.Ed. 693; Davis v. Royal Arcanum, 195 Mass. 402, 81 N.E. 294, 10 L.R.A., N.S., 722, 11 Ann.Cas. 777; Shipman v. Protected Home Circle, 174 N.Y. 398, 67 N.E. 83, 63 L.R.A. 347; Mutual Life Ins. Co. v. Kelly, 114 F. 268, 52 C.C.A. 154. The same principle has been applied to cases where the death of the insured was the result of his unlawful act, or was due to the commission of a crime resulting in the infliction of capital punishment. Amicable Soc. v. Bollard, 4 Bligh N.S. 194; Hatch, Adm'r v. Mutual Life Ins. Co., 120 Mass. 550, 21 Am.Rep. 541; Wells, Adm'r, v. New England Life Ins. Co., 191 Pa. 207, 43 A. 126, 53 L.R.A. 327, 71 Am.St.Rep. 763; Burt v. Union Central Life Ins. Co.,187 U.S. 362, 23 S.Ct. 139, 47 L.Ed. 216; Northwestern Mutual Life Ins. Co. v. McCue, 223 U.S. 234 [32 S.Ct. 220], 56 L.Ed. 419, 38 L.R.A., N.S., 57.
"In regard to the latter class of policies, viz. those payable to designated third persons as beneficiaries, the courts hold, as a rule, that a recovery may be had, notwithstanding the insured has intentionally caused his own death, where the policies are silent in that respect. Such determination is usually based on the theory that such beneficiaries acquired a vested interest in such policies at the time of their issuance, and thereafter their rights cannot be affected, by the wrong of the insured, for whose acts they are in no way responsible. Among the cases so holding are the following: Supreme Council, etc., v. Pels, 110 Ill. App. 409; Supreme Lodge, etc., v. Kutscher, 72 Ill. App. 462; Parker v. Des Moines Life Ass'n, 108 Iowa, 117, 78 N.W. 826; Supreme Conclave, etc., v. Miles, Adm'r, 92 Md. 613, 48 A. 845, 84 Am.St.Rep. 528; Kerr v. Minnesota, etc., Ass'n, 39 Minn. 174, 39 N.W. 312, 12 Am.St.Rep. 631; Fitch v. American, etc., Co.,59 N.Y. 557, 17 Am.Rep. 372; Grand Legion, etc., v. Beaty,224 Ill. 346, 79 N.E. 565, 8 L.R.A., N.S., 1124, 8 Ann.Cas. 160; Seiler v. Life Ass'n, 105 Iowa, 67, 74 N.W. 941, 43 L.R.A. 537; Morris v. Life Assur. Co., 183 Pa. 563, 39 A. 52; Patterson v. Natural Premium, etc., Co., 100 Wis. 118, 75 N.W. 980, 42 L.R.A. 253, 69 Am.St.Rep. 899; Shipman v. Protected Home Circle, 174 N.Y. 398, 67 N.E. 83, 63 L.R.A. 347.
"The decided cases are not uniform in giving effect to the distinction between the two classes of policies as indicated. Thus decisions may be found which hold that a recovery ought to be permitted on policies of the former class, viz. those payable to the insured or his legal representatives, where there is no provision against liability for death resulting from the causes stated. The line of reasoning usually relied on in such decisions is to the effect that the insurer has expressly agreed to pay on the death of the insured, without excepting death from such causes; that there is no adequate reason for disregarding the terms of the contract on the ground of public policy, and no more cause for inferring forfeiture or (of) insurance, where death results from such causes, than for requiring attainder, or forfeiture of other property belonging to the assured. Among the cases to this effect are the following: Collins v. Metropolitan Life Ins. Co., 232 Ill. 37, 83 N.E. 542, 14 L.R.A., N.S., 356, 122 Am.St. Rep. 54, 13 Ann.Cas. 129; Mills v. Rebstock, 29 Minn. 380, 13 N.W. 162; Campbell v. Supreme, Etc., 66 N.J.L., 274, *Page 450 
49 A. 550, 54 L.R.A. 576. On the other hand, there are cases which would indicate that third party beneficiaries ought not recover, where death results from the causes under consideration, although the policy be silent in that regard. The line of reasoning usually relied on in such cases is to the effect that death from such causes is not a risk intended to be covered, or which could legally have been covered by the policy; and, if such be the case, it cannot be construed to cover where death results from such causes in favor of any beneficiary whatsoever. Among the cases so indicating are the following: Mutual Life Ins. Co. v. Kelly, supra; Burt v. Union Central Life Ins., supra; Ritter v. Mutual Life Ins. Co., supra; Northwestern v. McCue, supra; Davis v. Royal Arcanum, supra.
"A careful consideration of the principles involved and authorities cited leads us to conclude that whether the insured die from suicide while sane, or as the result of some unlawful act, or by legal execution or conviction of crime, the effect on an ordinary life insurance policy must be the same, where it is silent as to death from such causes. It is apparent that the authorities are not in harmony, as to what the effect of death from such causes should be, but we are led to believe that the greater weight and better reason is in favor of permitting a recovery by third party beneficiaries, who have acquired a vested interest in such a policy, which is silent as to the effect of death from the causes indicated. * * *"
The Supreme Court of Illinois, in the case of Grand Legion of Illinois Select Knights of America v. Beaty, 224 Ill. 346, 79 N.E. 565, 566, 8 L.R.A., N.S., 1124, 8 Ann.Cas. 160, said:
"It has been frequently held that where an ordinary policy of life insurance is payable to the estate of the insured and nothing is said in the contract in reference to death by suicide while the insured is sane, if he commits suicide while sane there can be no recovery on the policy, for the reason, as it is said, that the parties to the contract could not have contemplated a risk which would result from the act of the insured in taking his own life, and that the insured, by his own act, could not be permitted to enlarge and increase the risk assumed by the insurer, and having done so, to permit his representatives to recover would be to permit them to take advantage of his wrong. Ritter v. Mutual Life Ins. Co.,169 U.S. 139, 18 S.Ct. 300, 42 L.Ed. 693. Where, however, a policy of that character is made payable to a third party, and contains no stipulation in reference to the insured intentionally destroying his own life, it is held that in the event of self-destruction of the insured while sane the beneficiary may recover, for the reason that his or her interest became a vested one upon the issuance of the policy and no act of the insured can take away that right, except it be an act which the contract expressly provides shall have that effect. Patterson v Natural Premium Mutual Life Ins. Co.,100 Wis. 118, 75 N.W. 980, 42 L.R.A. 253, 69 Am.St.Rep. 899; Fitch v. American P. L. Ins. Co., 59 N.Y. 557,17 Am.Rep. 372; Darrow v. Family Fund Society, 116 N.Y. 537, 22 N.E. 1093, 6 L.R.A. 495, 15 Am.St.Rep. 430; Kerr. v. Minnesota Mutual Benefit Ass'n, 39 Minn. 174, 39 N.W. 312, 12 Am.St. Rep. 631; Seiler v. Economic Life Ass'n, 105 Iowa, 87, 74 N.W. 941, 43 L.R.A. 537."
[6] Even though Josephine Payne came to her death as a result of the illegal operation for abortion to which she had voluntarily subjected herself, such submission on her part, which was reprehensible and detestible, cannot be used by the insurer as a valid defense to absolve itself from the payment of the proceeds of the policies to plaintiff, as plaintiff appears individually and as the designated beneficiary, having a vested interest in the policies. His rights as beneficiary could not be affected, and were not affected in any way by the act of the insured, for which he was in no way responsible, and there is no reason for disregarding the terms of the contract of insurance and exonerating the insurer on the grounds of public policy.
As to what the defendant's liability would have been had the policies been made payable to the estate of Josephine Payne, or to her personal representative, we express no opinion and by no means decide.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.